FILED

2010 Jul-26  PM 01:50
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **EDWIN PUTMAN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:09-cv-2555-AKK** |
| **ERIC SHINSEKI, Secretary,** | ) | |
| **Department of Veterans Affairs,** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

Presently before the court is Defendant's Motion for Summary Judgment

Or, Alternatively, To Dismiss for Failure to State a Claim, doc. 3, and Second

Motion for Summary Judgment and Motion to Dismiss for Lack of Jurisdiction,

doc. 7.  The Plaintiff has responded, doc. 12, and Defendant has replied, doc. 15.

Accordingly, this matter is ripe for this court's review.  Based on the reasons

stated fully below, the court DENIES Defendant's motion for summary judgment

on the "First through Fifth Incidents" and motion to dismiss the "Sixth Incident."

Regarding the "Seventh Incident," the court GRANTS the motion for summary

judgment on the race and gender discrimination claims and on the retaliation claim

based on the fourteen-day suspension on October 11-24, 2009, but DENIES the

motion on the retaliation claim based on the counseling Plaintiff received in front of staff members on May 27, 2009.

## I.  BACKGROUND

The facts are largely undisputed.  Plaintiff is a pharmacist employed by the Department of Veterans Affairs, Birmingham Medical Center.  Doc. 1 at ¶ 8.

A.      Plaintiff's Allegations of Discrimination

1.      The "First Through Fifth Incidents" - Agency No. 3676[1]

On October 13, 2006, Plaintiff filed a formal Equal Employment Opportunity ("EEO") complaint alleging, among other things, that Defendant "discriminated against [him] on the basis of race (White) and sex (male)" when (1) the Chief of Pharmacy Services issued him a proposed suspension on August 2, 2006, after investigating an altercation between Plaintiff and a co-worker, (2) Defendant assigned him to work two shifts without eight hours off between the shifts on August 8, 2006, (3) one of Defendant's supervisors caused him to engage that supervisor in a physical altercation in September 2006, and (4) the Chief of Pharmacy Services issued him a proposed ten-day suspension regarding the

---

[1] The agency numbers list only the last four digits of the complete number.  For example, Agency No. 3676 is actually Agency No. 200l-0521-2006103676.

September 2006 altercation.[2]  Doc. 9-1 at 3-4; doc. 6 at 3-6.  On November 3,

2009, Defendant's Office of Employment Discrimination Complaint Adjudication

concluded that Plaintiff "failed to establish by a preponderance of the evidence

that he was discriminated against with regard to the claims raised in his

complaint."  Doc. 9-1 at 27.  Defendant gave Plaintiff notice of the option to

appeal to the Equal Employment Opportunity Commission ("EEOC") within thirty

days of receipt of the final decision, or file a civil action within ninety days of

receipt of the final decision.  *Id*. at 27-28.  Plaintiff filed this lawsuit on December

12, 2009, within the ninety-day deadline.[3]

     2.     The "Sixth Incident"- Agency No. 4379

On August 29, 2008, Plaintiff contacted Defendant's EEO counselor to

complain about retaliation when Defendant issued him a notice of a proposed

reprimand for "improper conduct while sending email messages."  Doc. 5-1 at 2.

On September 19, 2008,  Defendant's Office of Resolution Management ("ORM")

"closed the informal counseling" on this issue and informed Plaintiff of his right to

file a formal complaint within "15 calendar days" from his receipt of the notice.

---

[2] The incidents listed here are also mentioned in the amended complaint.  Plaintiff's EEO complaint alleged other incidents that Plaintiff abandoned in the amended complaint and, consequently, are not listed here.

[3] Defendant challenges this fact on the basis that Plaintiff's initial complaint did not include the "First through Fifth Incidents"and has moved for summary judgment on this basis.

*Id.*  On March 4, 2009, Plaintiff filed a formal EEO complaint, alleging that Defendant retaliated against him based on the August 29, 2008, reprimand and because Defendant assigned him to work the "fast fill vault" without the assistance of a second pharmacist.  Doc. 5-1 at 13.  On March 12, 2009, ORM dismissed Plaintiff's claim for failing to comply with the regulatory time limits.  *Id.* at 15. The EEOC's Office of Federal Operations affirmed ORM's decision on June 30, 2009, *id.* at 21, and denied Plaintiff's request for reconsideration on September 17, 2009, *id.* at 24.[4]

3.    The "Seventh Incident" - Agency No. 4489

On August 26, 2009, Plaintiff contacted Defendant's EEO counselor and alleged during the counseling period that Defendant subjected him to "harassment consisting of four events, and indicated the events were based on reprisal for prior EEO activity."  Doc. 9-3 at 2.  Specifically, Plaintiff complained that: (1) on May 11, 2009, Defendant suspended him for fourteen days for displaying improper conduct with a patient, (2) in October 2008, he received a written reprimand dated September 12, 2008, (3) on May 27, 2009, Defendant counseled him in front of

---

[4] Defendant initially moved for summary judgment on the "Sixth Incident,"arguing that it was untimely.  Doc. 4 at 5-6; doc. 8 at 11.  However, in its Reply, Defendant concedes that there is a disputed issue of fact regarding whether Plaintiff and his counsel timely received notice that the EEOC denied his request for reconsideration, and Defendant withdrew its "motion for summary judgment to the extent it relates to the timeliness issue concerning that portion of Plaintiff's amended complaint regarding Agency No. 379 (Sixth Incident)."  Doc. 15 at 6.

other staff members, and (4) on July 16, 2009, Defendant issued him a fourteen-day suspension that was effective October 11-24, 2009.  *Id*. at 2-3.

Under Defendant's rules, employees must pursue counseling first before they can file formal EEO claims with Defendant.  *See* Doc. 5-1 at 5 ¶ 4.  Before the conclusion of the counseling period, on October 1, 2009, the American Federation of Government Employees Union ("Union") filed a grievance on Plaintiff's behalf regarding only the fourteen-day suspension effective October 11-24, 2009.  Doc. 9-4 at 20-21.  Two weeks later, the counseling period concluded and on October 19, 2009, Defendant issued Plaintiff notice of his right to file a formal EEO complaint of discrimination.  Doc. 9-3 at 2.  On November 2, 2009, approximately a month after the Union filed his labor grievance,  Plaintiff filed a formal EEO complaint alleging discrimination and "reprisal for prior EEO activity."  *Id*.  However, unlike his labor grievance, which only challenged the fourteen-day suspension, the EEO Complaint included the suspension and the three other incidents raised with the EEO counselor.  *Id*. at 2-3.

On December 17, 2009, ORM dismissed entirely the EEO complaint because, among other things, (1) EEOC regulations and the grievance procedures negotiated by the Union state that employees can raise allegations of discrimination under the negotiated grievance procedure or the statutory grievance

procedure, but not both, *id*. at 3; doc. 9-5 at 3; 29 C.F.R. § 1614.301(a), (2) the

EEO complaint raised the same issues as the union grievance, so that "these events

are inextricably intertwined," and "should be processed in one forum," doc. 9-3 at

3, and (3) § 1614.107(a) requires that a "formal EEO complaint filed after the

filing of the written grievance shall be dismissed," *id*. at 4, and that the reprimand

referenced in the September 12, 2008, letter, be dismissed because it was raised

previously, *id*.  Plaintiff did not amend the grievance to include these other issues.

On December 28, 2009, Defendant's Labor and Employee Relations

Department resolved Plaintiff's grievance by reducing Plaintiff's fourteen-day

suspension to a three-day "paper" suspension,  and "made [Plaintiff] whole for any

loss of wages, seniority, and benefits."  Doc. 9-4 at 4.  Plaintiff accepted this offer

on January 16, 2010, and settled his grievance.  *Id*.

B.     The District Court Lawsuit

1.     <u>The Original Complaint</u>

On December 18, 2009, Plaintiff filed a single-count complaint with this

court alleging retaliation.  Doc. 1.  His complaint recites primarily the facts

involving the "Sixth Incident."  Doc. 1 ¶¶ 7-22.  However, it references facts also

from the "First through Fifth" incidents – specifically, paragraph ten states, "On or

about September 13, 2006 the Plaintiff filed a second EEO claim involving

Harper, Holder (who had been demoted from assistant chief) and the Plaintiff's

immediate supervisor, at that time, Assistant Chief of Pharmacy, Monica

Sfakianos.  This claim is pending."  *Id*. ¶ 100.  On February 18, 2010, Defendant

filed its first Motion for Summary Judgment or, Alternatively, To Dismiss for

Failure to State a Claim.  Doc. 3.

>    2.    The Amended Complaint

On February 19, 2010, Plaintiff filed an amended complaint that recites

facts from the "First through Fifth," "Sixth," and "Seventh" incidents.[5]  Doc. 6 at

¶¶ 10-51.  In addition to the original retaliation count, Plaintiff added gender and

race discrimination claims.  *Id*. at  ¶¶ 51-58.  Regarding the "Seventh Incident,"

Plaintiff pled only two allegations: (1) the May 27, 2009, counseling he received

in front of staff members, and (2) the October 11-24, 2009, fourteen-day

suspension.  *Id*. at  ¶¶ 49-50.  On March 2, 2010, Defendant filed a Second Motion

for Summary Judgment and to Dismiss for Lack of Jurisdiction.  Doc. 7.

## II.  APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a

complaint fails to state a claim upon which relief can be granted.  "To survive a

---

[5] The amended complaint lists only six incidents because Plaintiff omitted a "Fourth Incident."  Doc. 6 at ¶¶ 26-35.

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citations and internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).

On a motion to dismiss under Rule 12(b)(6), the court accepts all factual allegations as true.  *See, e.g., Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000).  However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth.  *Iqbal*, 129 S. Ct. at 1950.

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at

323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence in the light most favorable to the nonmoving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

### III.  DISCUSSION

A.    The "First Through Fifth Incidents"

Defendant argues that it is due summary judgment on the "First through Fifth Incidents" because (1) "[n]one of those five 'incidents' were addressed in [Plaintiff's] original complaint" and were filed "untimely" after ninety days of receipt of the Final Agency Decision, doc. 8 at 6-8, and (2) they do not relate back to the original complaint because  "Plaintiff's original complaint in no way gave notice of the particular occurrences identified in 'The First Incident' through 'The Fifth Incident,'" *id*. at 10.  The court disagrees.

Federal Rule of Civil Procedure 15(c)(1)(B) allows parties to amend their pleadings to add a claim or defense when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out or

attempted to be set out in the original pleading."  "The rationale of Rule 15(c) is

that a party who has been notified of litigation concerning a particular occurrence

has been given all the notice that statutes of limitations were intended to provide."

*Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 150 n.3 (1984) (citation

omitted).  "So long as the original and amended petitions state claims that are tied

to a common core of operative facts, relation back will be in order."  *Mayle v.*

*Felix*, 545 U.S. 644, 664 (2005); *Dean v. United States*, 278 F.3d 1218, 1222 (11th

Cir. 2002) ("The key consideration is that the amended claim arises from the same

conduct and occurrences upon which the original claim was based.").  "The fact

that an amendment changes the legal theory on which the action initially was

brought is of no consequence if the factual situation upon which the action

depends remains the same and has been brought to defendant's attention by the

original pleading."  6A Charles Alan Wright & Arthur R. Miller, *Federal Practice*

*and Procedure*, § 1497 (3d ed. 2010).

  Plaintiff's original complaint provided Defendant sufficient notice of the

"First through Fifth Incidents" such that Plaintiff can invoke Rule 15(c) to amend

the complaint to specifically include them without any prejudice to Defendant.

Paragraph ten of the original complaint references an EEO complaint Plaintiff

filed on or around September 13, 2006.  Based on the evidence presented, the only

EEOC complaint filed in 2006 was Agency No. 3676, which involved Plaintiff's race and gender claims in the "First through Fifth Incidents."  Further, paragraph ten mentions an incident with the Assistant Chief of Pharmacy, which is consistent with Plaintiff's claims in Agency No. 3676.  Doc. 9-1 at 4.  In light of these facts and the parties' history, paragraph ten of the original complaint was sufficiently specific to place Defendant on notice that the complaint alleged facts from the "First through Fifth Incidents" described in Agency No. 3676.

In short, the amended complaint's race and gender discrimination claims relate back to the core set of facts alleged in the original complaint.  They arise out of the same "conduct" or "occurrence" alleged in paragraph ten of the original complaint, doc. 6 at 8-9, and simply describe in greater detail the facts contained in Agency No. 3676 and added legal theories based on those same facts.  These claims, therefore, relate back to the original complaint.  Accordingly, the motion for summary judgment on the "First through Fifth Incidents" is DENIED.

B.    The "Sixth Incident"

Defendant argues that the court should grant its motion to dismiss regarding the "Sixth Incident" because Plaintiff's allegations – having to work the "fast fill vault" without the assistance of another pharmacist and receiving a reprimand – are not materially adverse, and thus, fail to state a retaliation claim.  Doc. 3 at 7;

doc. 15 at 6.  A *prima facie* Title VII retaliation claim requires the plaintiff to show that "(1) [he] engaged in . . . statutorily protected expression; (2) [he] suffered an adverse employment action; and (3) there is a causal [connection] between the two events."  *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002) (citations and internal quotation marks omitted).

Accepting the complaint's factual allegations as true, Plaintiff has stated a claim that can survive a motion to dismiss.  Specifically, Plaintiff asserts that after he filed an EEO complaint, he received a proposed reprimand and was required to work in the "fast fill vault" without help.  Presumably, Plaintiff is contending that Defendant never assigns a single employee to the "fast fill vault."  If that is in fact the case, or if Defendant has a custom and practice of always requiring two employees for this assignment, and if Defendant is unable to explain why it deviated from its policy, a reasonable person could, in fact, find that Defendant retaliated against Plaintiff.  *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) (Concluding that whether an action is materially adverse should be judged based on a reasonable person in the plaintiff's position, considering "all the circumstances" (citation omitted)).  Plaintiff is entitled to conduct discovery on this issue to see if he can find evidence to survive a summary judgment motion.  Therefore, the motion to dismiss the "Sixth Incident"

is DENIED.

C.    The "Seventh Incident"

For the "Seventh Incident," the amended complaint challenges two things:

(1) a reprimand Plaintiff received in front of others, and (2) a fourteen-day

suspension.  Doc. 6 at 8.  Plaintiff contends these two incidents amounted to race

and gender discrimination and retaliation.  *Id*. at 8-9.  Defendant argues that it is

due summary judgment because this court lacks jurisdiction over the "Seventh

Incident" since Plaintiff (1) elected to pursue his grievance through the negotiated

grievance procedure and was therefore precluded from pursuing it through the

EEO process, doc. 7 at 11-12; doc. 15 at 9, and (2) failed to appeal the Union

grievance to the EEOC,  *id*. at 13.  Plaintiff responds that (1) his statutory right is

not forfeited by pursuing his grievance under a collective bargaining agreement,

doc. 12 at 20, (2) grievants are not given the same rights and remedies under a

negotiated grievance procedure as plaintiffs in a Title VII action, *id*., and (3) under

*Gupta v. East Texas State University.*, 654 F.2d 411 (5th Cir. Unit A Aug. 1981),

the court has ancillary jurisdiction over his retaliation claim, *id*. at 21.  Defendant

disagrees with Plaintiff's reading of *Gupta* and contends that no ancillary

jurisdiction exists over the retaliation claim since there are "no other

administrative charges that are properly before the court," doc. 15 at 10.

Discrimination claims brought by federal employees who are covered under collective bargaining agreements are governed by the Federal Labor Management Relations Act, 5 U.S.C. § 7121(d)[6], and by EEOC Regulation 29 C.F.R. § 1614.301(a)[7].  Under Section 7121(d), employees in the bargaining unit "may raise the matter under a statutory procedure or the negotiated procedure, but not both."  *See also* Section 1614.301(a).[8]  The statute states further that an employee

---

[6] Section 7121(d) states, in pertinent part, the following:

An aggrieved employee affected by a prohibited personnel action under section 2302(b)(1) of this title which also falls under the coverage of the negotiated grievance procedure may raise the matter under a statutory procedure or the negotiated procedure, but not both.  An employee shall be deemed to have exercised his option under this subsection to raise the matter under either a statutory procedure or the negotiated procedure at such time as the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, in accordance with the provision of the parties' negotiated procedure, whichever event occurs first.  Selection of the negotiated procedure in no manner prejudices the right on an aggrieved employee to request the Merit Systems Protection Board . . . or, where applicable, to request the [EEOC] to review the final decision in any other matter involving a complaint of discrimination . . . .

[7] Section 1614.301(a) states, in pertinent part, the following:

When a person is . . . covered by a collective bargaining agreement that permits allegations of discrimination to be raised in a negotiated grievance procedure, a person wishing to file a complaint or a grievance on a matter of alleged employment discrimination must elect to raise the matter under either part 1614 or the negotiated grievance procedure, but not both.

[8] Section 3 of the Union's Grievance Procedure states the following:

A.  As provided for in 5 USC Section 7121, the following actions may be filed either under the statutory procedure or the negotiated grievance procedure but not both:

exercises his right when "the employee timely initiates an action under the applicable statutory procedure or timely files a grievance in writing, . . . whichever event occurs first."  5 U.S.C. § 1721(d).

Significantly, any employee who files a grievance alleging discrimination "may not thereafter file a complaint on the same matter."  29 C.F.R. § 1614.301(a). Moreover, "[a]ny such complaint filed after a grievance has been filed on the same matter shall be dismissed without prejudice to the complainant's right to proceed through the negotiated grievance procedure including the right to appeal to the Commission from a final decision."  *Id*.  Therefore, when federal employees pursue claims through the negotiated grievance procedure, they are precluded from raising the same action – a Title VII action – through the statutory procedure. *Fernandez v. Chertoff*, 471 F.3d 45, 52 (2d Cir. 1991); *Vinieratos v. U.S. Dep't of the Air Force*, 939 F.2d 762, 768 (9th Cir. 2006).  Further, "[t]he employee who chooses the negotiated procedure may appeal the arbitrator's decision to the

---

* * * *

3. Discrimination (5 USC Section 2302(b)(1)).

C.  An employee shall be deemed to have exercised her option under this Section when she timely initiates an action under the applicable statutory procedure or files a timely grievance in writing under the negotiated grievance procedure, whichever event occurs first.

Doc. 9-5 at 3.

EEOC.  Only after the EEOC has rendered a decision or failed to do so within 180

days may the employee use [Title VII] and initiate suit in district court."

*Fernandez*, 471 F.3d at 54 (citing *Johnson v. Peterson*, 996 F.2d 397, 401 (D.C.

Cir. 1993)).

      *1.  Plaintiff's Race and Gender Claims*

      On October 1, 2009, prior to filing an EEO complaint for the same conduct,

Plaintiff challenged his fourteen-day suspension through Defendant's negotiated

grievance procedure.  Doc. 9-3 at 3; doc. 9-4 at 9.  His choice to pursue first the

grievance procedure barred Plaintiff from utilizing the EEOC statutory procedure

until after exhausting his labor grievance.  5 U.S.C. § 7121(d); *Vinieratos*, 939

F.2d at 768; doc. 9-3 at 4.  By law, Plaintiff can only file an EEOC charge to

appeal the grievance decision and, significantly, can only file a lawsuit for this

conduct after the EEOC renders a decision or fails to do so within 180 days.

*Fernandez*, 471 F.3d at 54 ("Accordingly, in a pure discrimination case, an

employee who chooses the negotiated grievance procedure must appeal the

arbitrator's award to the EEOC before bringing suit.").

      On January 16, 2010, Plaintiff accepted the Labor and Employee Relation's

decision regarding the "Seventh Incident" at Step 3 of the grievance process.  Doc.

9-4 at 4.  Consistent with his acceptance of a settlement, there is no evidence

before the court, nor does Plaintiff suggest, that he requested further grievance procedures or appealed a final decision to the EEOC.  Since Plaintiff resolved his grievance voluntarily and never appealed it to the EEOC, he is precluded by law from challenging this fourteen-day suspension in this lawsuit.  In fact, since Plaintiff accepted Defendant's resolution for this grievance, his attempt to litigate this claim is disingenuous, to say the least.

The second component of the "Seventh Incident" before this court is Plaintiff's race and gender claims related to the counseling he received in front of other staff members on May 27, 2009.  Like his suspension claim, Plaintiff failed to exhaust his administrative remedies on it as well.  As stated previously, ORM dismissed the formal EEO complaint containing the reprimand because it was "inextricably intertwined" with the issues presented in Plaintiff's grievance for the fourteen-day suspension.  Doc. 9-3 at 3.  However, based on the record before this court, Plaintiff never amended that grievance to add the May 27, 2009, reprimand. Moreover, Plaintiff never appealed ORM's decision to dismiss his charge, nor did he appeal the grievance decision to resurrect his counseling claim.  Doc. 9-4. Because Plaintiff failed to exhaust his administrative remedies, the "Seventh Incident's" race and gender claims for the May 27, 2009, counseling are also not properly before this court.

Accordingly, the court GRANTS Defendant's motion for summary judgment on Plaintiff's race and gender claims.

### 2.    *Plaintiff's Retaliation Claims*

Plaintiff also pursues a retaliation claim for the public counseling he received and his fourteen-day suspension that comprised the "Seventh Incident." He contends that he can pursue his retaliation claim even though he failed to exhaust his administrative remedies.  Specifically, Plaintiff cites *Gupta*, 654 F.2d 411, to support his contention that it is "unnecessary" to appeal to the EEOC the retaliation claims he raised in his grievance.  Doc. 12 at 21.  In *Gupta*, the plaintiff filed the first EEOC Charge in July 1975, alleging Title VII violations.  He received a right to sue in February 1976, and filed a lawsuit in March 1976. *Gupta*, 654 F.2d at 413.  After filing his lawsuit, the employer informed the plaintiff that it would not renew his employment contract.  Plaintiff did not file an EEOC charge regarding this alleged retaliatory discharge.  During the trial of the claims in his first EEOC charge, "[t]he jurisdiction of the district court over the retaliatory-discharge issue [was] thrown into doubt, as the filing of an administrative complaint is a jurisdictional prerequisite to bringing suit under Title VII."  *Id*. (citation omitted).  Reversing the district court's dismissal of the retaliatory-discharge claim, the Fifth Circuit held that "it is unnecessary for a

plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge properly before the court." *Id.* at 414; *see also Goza v. Bolger*, 538 F. Supp. 1012, 1015 (N.D. Ga. 1982).

As previously stated, based on the record before this court, Plaintiff did not amend his grievance to include the May 27, 2009, counseling he received in front of other staff members.  Although Plaintiff failed to exhaust his administrative remedies for this counseling incident, under *Gupta* and *Goza*, this court has ancillary jurisdiction over it because it grows out of the "First through Fifth" and "Sixth" incidents.  Therefore, as it relates solely to this counseling, the motion for summary judgment is DENIED.

*Gupta* and *Goza*, however, do not save the retaliation claim Plaintiff raised in the "Seventh Incident" regarding his October 11-24, 2009, fourteen-day suspension.  Based on the record before it, Plaintiff settled his grievance regarding the fourteen-day suspension one month *after* filing the present lawsuit, as evidenced by his signature and hand written note on the Grievance Decision, stating, "I am accepting the offer although I feel my actions were not punishable."

Doc. 9-4 at 4.  The settlement included a financial gain to Plaintiff.[9]  He cannot

benefit from it and thereafter seek to get a second bite of the apple.  Indeed, it is

fundamental that claims settled during administrative procedures cannot

subsequently form the basis of a lawsuit, except to enforce the settlement.  Where,

as here, Plaintiff chose voluntarily to settle the incident involving his fourteen-day

suspension, he cannot resuscitate it on an ancillary jurisdiction theory that has no

application to this set of facts.  Therefore, this retaliation claim is not properly

before the court, and the motion for summary judgment on the "Seventh Incident"

as it relates to the fourteen-day suspension of October 11-24, 2009, is GRANTED.

## IV.  CONCLUSION

The court DENIES Defendant's motion for summary judgment on the "First

through the Fifth Incidents" and motion to dismiss the "Sixth Incident."

---

[9] The settlement stated the following:

The 14 day suspension is reduced to a 3 day "paper" suspension.  As the grievant has already served the 14 day suspension he will be made whole for any loss of wages, seniority, and benefits.  For the purposes of clarity, corrected time cards will be submitted to reflect authorized absence for the time missed, including any pay differentials.  His OPF will be purged of any documents reflecting a 14 day suspension.  The 3 day paper suspension is considered to have already been served, on the clock, without loss of pay.  The time of the paper suspension will be the first three scheduled work days for the week of October 11, 2009.  It is clearly understood the paper suspension is of the same gravity and serves all the same purposes for progressive discipline as a time off suspension.

Doc. 9-4 at 4.

Regarding the "Seventh Incident," the court GRANTS the motion for summary judgment on the race and gender discrimination claims and retaliation claim regarding the fourteen-day suspension on October 11-24, 2009, but DENIES the motion on the retaliation claim as it relates to the counseling Plaintiff received in front of staff members on May 27, 2009.

Done the 26th day of July, 2010.


**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE